UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DCR CONSTRUCTION, INC.,

           Plaintiff,

v.                                  Case No:     8:09-CV-741-T-27AEP

DELTA-T CORPORATION,

           Defendant.
_____/

## ORDER

**BEFORE THE COURT** are DCR Construction, Inc.'s motion for confirmation of arbitration award (Dkt. 1), Delta-T Corporation's motion to vacate arbitration award (Dkt. 8), Delta-T Corporation's motion to stay proceedings pending appeal (Dkt. 13), and M&I Marshall & Ilsley Bank's motion for confirmation of arbitration award (Dkt. 17). Upon consideration, it is ordered that the motion to stay (Dkt. 13) is **DENIED**, the motions to confirm the arbitration award (Dkts. 1, 17) are **GRANTED**, and the motion to vacate the arbitration award (Dkt. 8) is **DENIED**.

*Background*

Delta-T designs and constructs corn ethanol plants. In 2006 and 2007, Delta-T entered into a series of contracts with DCR, in which DCR agreed to fabricate equipment for the construction of nine corn ethanol plants. The contract for one of the projects, the Altra project, required all disputes to be submitted to arbitration. The remaining contracts did not contain arbitration clauses.

In February 2008, DCR filed a demand for arbitration, alleging that Delta-T breached the Altra project contract. In March 2008, Delta-T filed an action in Florida state court seeking to replevy construction materials related to two other projects. As a defense to the replevin action, DCR contended that its performance was excused by Delta-T's breach of the Altra project contract.

1

The state court action proceeded to trial before the arbitration. During the trial, Delta-T obtained DCR's agreement to cancel the arbitration and have the Altra claims heard in state court as part of the trial. However, when the parties requested to present the additional claims in the ongoing trial, the court denied the request. The trial proceeded on the replevin claims.

Before the entry of judgment, DCR and Delta-T arbitrated the Altra claims. Ultimately, the arbitrators rendered a modified award of $6.18 million in favor of DCR. Thereafter, the state court entered final judgment in favor of Delta-T on the replevin claims. Delta-T appealed the judgment arguing, among other things, that the court erred in refusing to hear the Altra claims as part of the ongoing trial.

One week after Delta-T filed its notice of appeal, DCR commenced this action to confirm the arbitration award. M&I Marshall & Ilsley Bank intervened in the proceeding in order to join DCR's motion to confirm the award. Delta-T moved to vacate the award, arguing that DCR's agreement to present the Altra claims in court constituted a waiver of the right to arbitrate. As a result of the waiver, Delta-T contends that the arbitrators lacked authority to render the award.

Delta-T has moved to stay this action until the resolution of the state court appeal. At the hearing on the motion to stay, Delta-T conceded that there will be no basis to vacate the award if the trial court is not reversed for refusing to hear the Altra claims. DCR opposes the motion to stay, arguing that Delta-T cannot satisfy the requirements to yield federal jurisdiction.

*Analysis*

1. *Motion to stay*

The federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "Generally, . . . the rule is that the 'pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal court having jurisdiction.'" *Id.* (quotation omitted). However, pursuant to *Colorado River*, a federal court has discretion to stay an action for reasons of "wise judicial administration" where parallel state court proceedings would result in duplicative litigation. *See id.* at 817-18. Only "exceptional" circumstances and "the clearest of justifications" will warrant the surrender of jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

The threshold question is whether the concurrent state and federal actions are truly parallel. *Ambrosia Coal & Const. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). To satisfy this inquiry, the proceedings must "involve substantially the same parties and substantially the same issues." *Id.* DCR argues that the state and federal actions do not involve substantially the same issues. Indeed, neither party has petitioned the state court to confirm or vacate the arbitration award. Rather, the issue before the state appellate court is whether the trial court erred in declining the parties' request to present the Altra claims in the ongoing trial. Here, by contrast, Delta-T has argued that DCR's agreement to have the Altra claims heard in court constituted a waiver of the right to arbitrate. Notwithstanding DCR's contentions, it will be assumed for purposes of the *Colorado River* analysis that the proceedings involve substantially similar issues.

Several factors govern the propriety of entering a discretionary stay on account of a parallel state court proceeding, which include: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Id.* at 1331. Further, the vexatious or reactive nature of the federal or state litigation should be considered. *Id.* Although the weight of each factor varies with the particular circumstances of the case, the abstention inquiry

3

must be "heavily weighted in favor of the exercise of jurisdiction." *Id.* at 1332 (quoting *Moses H. Cone*, 460 U.S. at 16).

It is undisputed that neither court has obtained jurisdiction over any property. Nor have the parties argued that either forum is inconvenient. The first and second factors are therefore neutral.

The third factor considers the potential for piecemeal litigation. In *Colorado River*, "[t]he single most important factor in the Supreme Court's decision to permit abstention was that the federal statute upon which the lawsuit revolved evinced a clear federal policy of avoiding the piecemeal adjudication of water rights in a river system." *Ambrosia Coal*, 368 F.3d at 1333. In stark contrast, the federal policy of enforcing arbitration agreements "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis in original). Further, the avoidance of piecemeal litigation only favors abstention where "the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. In *Colorado River*, for example, the litigation involved claims against 1,000 water users. *Id.* This action involves claims against a single party.

Delta-T argues that this action should be stayed to avoid potentially inconsistent results. If the state court is reversed for refusing to hear the Altra claims at trial and requiring the parties to arbitrate, there would certainly be an inconsistency with this Court's confirmation of the award. Notwithstanding the logical appeal of Delta-T's argument, the mere potential for inconsistent results is not a sufficient reason to abstain from the exercise of jurisdiction. *See id.* Further, as DCR argued at the hearing, Delta-T may seek relief pursuant to Rule 60(b)(5) if the trial court is reversed. That Delta-T might be required to pursue post-judgment relief is insufficient to render the concurrent actions "abnormally excessive or deleterious." *See id.* When "heavily weighted in favor of the

4

exercise of jurisdiction," the inconsistent results that could arise in this case do not provide "exceptional" circumstances that justify abstention. *Moses H. Cone*, 460 U.S. at 16, 25. Although a close call, the third factor does not favor the surrender of jurisdiction.

The fourth factor compares the relative progress of the state and federal cases. *See Moses H. Cone*, 460 U.S. at 21. Although the state court action proceeded to judgment before DCR filed its petition in federal court, Delta-T seeks a stay pending resolution of the state court appeal. At the hearing, the parties represented that all briefs have been filed in the state appellate court and oral argument is scheduled for February 2010. In the federal action, the motion to confirm the arbitration award and the motion to vacate the award have been fully briefed. However, the parties have already presented oral argument. The federal action is therefore running ahead of the state court appeal, albeit slightly, which tips toward exercising jurisdiction.

The fifth factor, the law to be applied, also weighs against a discretionary stay. DCR filed its petition to confirm the arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Delta-T likewise moved to vacate the award pursuant to the FAA. Therefore, the law to be interpreted and applied is federal law. *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1365 (11th Cir. 1998). Delta-T correctly argues that enforcement of the FAA is left primarily to the state courts. *See Moses H. Cone*, 460 U.S. at 25, n.32. Notwithstanding the state courts' concurrent jurisdiction, the FAA "represents federal policy to be vindicated by the federal courts where otherwise appropriate." *Id.*

Delta-T argues that state law governs the question of whether the trial court erred in refusing to hear the Altra claims in the ongoing trial. However, that issue is before the state appellate court, not the federal court. The issue before the federal court is whether the arbitration award should be confirmed pursuant to section 9 of the FAA or vacated pursuant to section 10. Therefore, the federal

5

action does not involve "complex questions of state law that a state court [is] best suited to resolve." *Ambrosia Coal*, 368 F.3d at 1334. Because "the presence of federal-law issues must always be a major consideration weighing against [the] surrender" of jurisdiction, the fifth factor points to the exercise of jurisdiction. *See Moses H. Cone*, 460 U.S. at 26.

The sixth factor evaluates whether the state court proceedings are adequate to protect the parties' rights. The FAA provides for "expedited" judicial review of an arbitration award. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 1400 (2008). To the extent the award is not vacated, modified, or corrected, the FAA provides parties with a substantive right to a judgment confirming the award. 9 U.S.C. § 9. No party has petitioned the state court to confirm or vacate the arbitration award. In the absence of a concurrent state court petition, the state court proceedings are inadequate to protect DCR's rights to expedited judicial review and a judgment confirming the award. Consequently, the sixth factor favors the exercise of jurisdiction.

The seventh factor weighs the vexatious or reactive nature of the litigation. Notwithstanding that DCR filed its petition in federal court one week after Delta-T filed the notice of appeal, there is no contention of any impropriety in DCR's decision to seek confirmation of the award in federal court. The seventh factor is therefore neutral.

Each of the factors relevant to determining whether "wise judicial administration" justifies a discretionary stay have been carefully considered. The avoidance of piecemeal litigation and inconsistent results, while arguably favoring abstention in this case, are nonetheless insufficient to warrant the relinquishment of federal jurisdiction. After extending "a heavy bias in favor of exercising jurisdiction," this case does not present exceptional circumstances which justify a stay pursuant to *Colorado River*. *See Ambrosia Coal*, 368 F.3d at 1332. Accordingly, the Court declines

to exercise its discretion to stay this action pending resolution of the state court appeal.[1]

2.  *Motion to confirm the arbitration award*

The FAA requires an arbitration award to be confirmed "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. Under section 10, an award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). There is no contention of any impropriety on the part of the arbitrators. Instead, Delta-T argues that the arbitrators exceeded their powers, first, because DCR waived the right to arbitrate, and second, because the parties had a right to be heard in court. As an additional ground for vacatur, Delta-T argues that enforcement of the arbitration award would contravene public policy.

Delta-T bases its waiver argument on DCR's agreement to include the Altra claims in the trial. Because arbitrators derive their authority from the parties' agreement, Delta-T concludes that the arbitrators exceeded their powers within the meaning of section 10(a)(4). "[B]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990). To establish a waiver of the right

---

[1] Nothing in this order is intended to impact the state court litigation in any manner.

to arbitrate, first, there must be a demonstration that "under the totality of the circumstances," the party "acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002). Second, there must be a showing of prejudice. *Id.* at 1316.

The first prong is generally satisfied "when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Id.* (quotation omitted). There has been no showing that DCR substantially participated in litigation with respect to the Altra claims. Further, considering the totality of the circumstances, Delta-T's argument that DCR's actions constituted an intentional relinquishment of the right to arbitrate is not persuasive. The record demonstrates that the parties agreed to include the Altra claims in the trial for purposes of efficiency and convenience. That agreement was contingent upon the state court's approval, which was not given. There is nothing in the record to demonstrate that DCR intended to waive the right to arbitrate the Altra claims regardless of whether the court agreed to hear those claims as part of the ongoing trial. Therefore, it cannot be said that DCR's agreement rose to the level of a waiver.

The second prong requires a showing of prejudice. *Id.* Courts have found prejudice, for example, where a party demands arbitration after allowing the opposing party to incur the expenses of litigation. *See Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995). Here, the trial court immediately rejected the parties' proposal. Delta-T has not presented any argument or evidence of prejudice.

In short, Delta-T failed to satisfy the "heavy burden of proof" required to demonstrate that DCR waived the right to arbitrate. *See Stone*, 898 F.2d at 1543. It is therefore unnecessary to determine whether the arbitrators exceeded their powers within the meaning of section 10(a)(4) as a result of the alleged waiver.

Next, Delta-T argues that the arbitrators exceeded their powers because the parties had a

constitutional right to be heard in court. It is well-settled that agreements to arbitrate will be enforced notwithstanding the contractual relinquishment of the right of access to the courts. *Kaplan v. Kimball Hill Homes Fla., Inc.*, 915 So. 2d 755, 761 (Fla. 2d DCA 2005) ("[A]n agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005) ("Thus, where a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes."). Consequently, Delta-T relinquished its right to be heard in court upon entering into the arbitration agreement. Had the parties executed a joint stipulation that the Altra claims would only be heard in court, Delta-T's position would have more argumentative force.

Finally, Delta-T argues that enforcement of the arbitration award would contravene public policy. Recently, the Supreme Court held that where, as here, the parties seek judicial review of an arbitration award pursuant to the FAA, section 10 establishes the exclusive regime for vacatur. *Hall Street*, 128 S.Ct. at 1403. Public policy is not one of the grounds listed in section 10. Nonetheless, Delta-T argues that public policy remains a viable basis for vacating the award.

Although the Eleventh Circuit has recognized that section 10 offers the exclusive grounds for vacatur, the Circuit Court has not specifically addressed the extent to which any unenumerated grounds may form the basis for vacating an award. *See AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 579 F.3d 1268, 1271 (11th Cir. 2009). Other circuit courts which have examined the issue post-*Hall Street* have found that grounds not listed in section 10 which are considered "shorthand" for the statutory grounds remain viable bases for vacating an award. *See, e.g., Comedy Club Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (under Ninth Circuit precedent, manifest disregard is considered "a part of § 10(a)(4)" and therefore remains a

valid ground for vacatur after *Hall Street*); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94-95 (2d Cir. 2008) (applying manifest disregard as basis for vacatur after construing the ground as shorthand for section 10(a)(4)). On the other hand, *Hall Street* abolished all independent non-statutory grounds for vacatur. *See, e.g., Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355, 358 (5th Cir. 2009) (under Fifth Circuit precedent, manifest disregard is considered an independent, non-statutory ground and therefore was abolished by *Hall Street*).

Delta-T does not contend that public policy is part of any enumerated grounds for vacatur. To the contrary, the Eleventh Circuit previously recognized public policy as one of the "non-statutory bases" for vacating an arbitration award. *See, e.g., Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1326 (11th Cir. 2005). Following *Hall Street*, public policy is no longer a viable ground for vacatur where, as here, the parties seek judicial review of an arbitration award pursuant section 9 or section 10 of the FAA.[2] *See Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, 583 F. Supp. 2d 1288, 1290-91 (S.D. Fla. 2008).

Delta-T failed to establish any grounds for vacating the award pursuant to section 10 of the FAA. Therefore, the arbitration award must be confirmed. *See* 9 U.S.C. § 9.

*Conclusion*

Accordingly it is **ORDERED** that

1) Delta-T Corporation's motion to stay (Dkt. 13) is **DENIED.**

2) Delta-T Corporation's motion to vacate the arbitration award (Dkt. 8) is **DENIED.**

3) The motions to confirm the arbitration award (Dkts. 1, 17) are **GRANTED.**

---

[2] The Supreme Court confined the holding in *Hall Street* to review under the FAA. 128 S.Ct. at 1406. Although Delta-T filed its motion pursuant to the FAA, Delta-T notes that Florida Statute § 682.13 also authorizes vacatur if the arbitrators exceeded their powers. However, Delta-T does not argue that the award should be vacated under Florida law for reasons of public policy. Further, DCR moved to confirm the award pursuant to the FAA which requires confirmation unless the award is vacated pursuant to section 10. *See* 9 U.S.C. § 9. Public policy, which is not listed in section 10 and does not survive *Hall Street*, affords no defense to confirmation under the FAA. *See id.*

4) The Modified Award of the American Arbitration Association, Commercial Arbitration Tribunal, in the matter of arbitration between DCR Construction, Inc. and Delta-T Corporation, case number 33-421-Y-00113-08 is **CONFIRMED.**

6) The clerk is directed to enter judgment in favor of DCR Construction, Inc. in the amount of $6,178,928.24, plus prejudgment interest at the rate of six percent (6%) per annum from March 19, 2008 until the date of the judgment, the total of which shall bear post-judgment interest at the rate prescribed by Virginia Code § 6.1-330.54. A copy of the modified arbitration award (Dkt. 1-2, pp. 74-80) shall be attached to the judgment.

7) The clerk is directed to **CLOSE** the case. All pending motions are denied as moot.

**DONE AND ORDERED** in chambers this 29th day of December, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

11